UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00243-RSE

**VALERIE MARIE PRATER**                                                                          **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                                              **DEFENDANT**

**MEMORANDUM OPINION
AND ORDER**

The Commissioner of Social Security denied Valerie Marie Prater's ("Prater's") application for disability insurance benefits. Prater seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Prater (DN 22) and the Commissioner (DN 24) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11).

I. Background

Valerie Prater is 55 years old, lives with her husband in Radcliff, Kentucky, and holds a General Educational Development ("GED") Certificate of High School Equivalency. (Tr. 160, 176, 178). Prater is presently unemployed but has past relevant work experience as a district manager in tax services from October 2000 to December 2018. (Tr. 209). On December 20, 2018,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

Prater protectively filed an application for disability insurance benefits ("DIB") from the Social Security Administration under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) ("Act"), alleging disability beginning on December 6, 2018. (Tr. 160). Prater claimed she could not perform work at substantial gainful levels due to degenerative disc disorder, history of foot and shoulder surgery, and migraines. (Tr. 177). Her application was denied initially on March 26, 2019 (Tr. 95) and upon reconsideration on August 2, 2019 (Tr. 100). Upon Prater's request, a hearing was conducted before Administrative Law Judge Lisa Hall ("ALJ Hall") in Paducah, Kentucky on July 16, 2020. (Tr. 34–65). Prater appeared in person and was represented by attorney John Sharpensteen. (Tr. 36). ALJ Hall issued an unfavorable decision on September 21, 2020. (Tr. 14–29).

ALJ Hall applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Prater has not engaged in substantial gainful activity since December 6, 2018, the alleged onset date. (Tr. 19). Second, Prater has the severe impairments of degenerative disc disease and right shoulder tendonitis. (*Id.*). Third, none of Prater's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 23). ALJ Hall then determined Prater has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. 404.1567(b), but "she can only occasionally crawl or climb ladders [and] should avoid concentrated exposure to vibration and hazards, such as unprotected heights or moving/dangerous machinery." (Tr. 23–24).

Fourth, ALJ Hall found that Prater can perform her past relevant work as an office manager, as it would not require performance of work-related activities precluded by her RFC. (Tr. 29). ALJ

Hall concluded that Prater was not disabled, as defined in the Social Security Act, from December 6, 2018 through the date of her decision. (*Id.*). Prater sought review of ALJ Hall's decision. (Tr. 157–59). The Appeals Council declined review on February 12, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Prater sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## III. Analysis

Prater raises three related issues for review. First, she argues ALJ Hall should have deemed her migraines a severe impairment at step two. (DN 22-1, at PageID # 872). Second, Prater claims

3

ALJ Hall's RFC determination is not supported by substantial evidence because she failed to account for the limitations brought by her headaches and migraines. (*Id.*). Third, Prater alleges ALJ Hall erred in evaluating her subjective complaints regarding headaches and migraines. (*Id.* at PageID # 877–78).

        A.  ALJ Hall's Assessment of Prater's Severe Impairments at Step Two

Recognizing that an ALJ's severe impairment designation at step two is a "de minimus hurdle," Prater nevertheless maintains ALJ Hall should have designated her migraines as severe because they have "more than a minimal impact on [her] ability to work." (DN 22-1, at PageID # 873, 876). The Commissioner suggests this argument must fail since ALJ Hall did not "screen out" Prater's claim by denying it at step two. (DN 24, at PageID # 886). The Commissioner further notes that ALJ Hall reviewed and extensively discussed the medical record before finding Prater's migraines non-severe. (*Id.* at PageID # 886–87).

As a preliminary note, Prater also criticizes ALJ Hall's opinion for failing to indicate whether her headaches were not a medically determinable impairment or a non-severe impairment at step two. (DN 22-1, at PageID # 875). This distinction is important because SSR 96-8p dictates that an ALJ is required to consider all limitations imposed by a claimant's impairments, including those that are non-severe, when determining a claimant's RFC. *See* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). This is because even a non-severe impairment may, when considered with a claimant's other impairments, cause significant work-related limitations. *Id.* On the other hand, if an alleged impairment is not medically determinable, the ALJ need not consider that impairment in assessing the RFC. *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (providing that a "claimed condition which is not 'medically determinable' need not be considered

at all" in determining a claimant's RFC).

After outlining Prater's severe impairments at the outset of step two, ALJ Hall thoroughly analyzed Prater's non-severe impairments, which included her history of foot surgery, obesity, asthma, migraines, and depressive disorder. (Tr. 19–23). Although ALJ Hall did not provide a list of non-severe impairments similar to the list of those severe, it is clear by her analysis that she distinguished Prater's migraines as a non-severe impairment.[2]

Notwithstanding, the regulations do not require an administrative law judge to designate each impairment as "severe" or "non-severe." 20 C.F.R. § 404.1520(a)(ii). The Commissioner is correct that the severity standard at step two is merely a threshold inquiry that, if satisfied by the evidence presented by a claimant, allows the administrative law judge to proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523(c). Here, ALJ Hall determined that Prater had severe impairments sufficient to proceed to step three. Therefore, "[t]he fact that some of [her] impairments were not deemed to be severe at step two is [] legally irrelevant." *Rhodes v. Comm'r of Soc. Sec.*, No. 3:17-CV-167-RGJ-CHL, 2019 WL 7643879, at *6 (W.D. Ky. Mar. 7, 2019) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). ALJ Hall's failure to designate Prater's headaches severe at step two was not reversable error.

B. ALJ Hall's Residual Functional Capacity Determination at Step Five

Prater next claims ALJ Hall's RFC determination is not supported by substantial evidence because she failed to account for limitations caused by headaches and migraines. (DN 22-1, at PageID # 872). The Commissioner submits that ALJ Hall considered Prater's reported symptoms, treatment records, clinical findings and reports, and medical opinions to form a well-supported RFC. (DN 24, at PageID # 890).

---

[2] Having designated Prater's migraines as non-severe, ALJ Hall was still required to consider the limitations they caused in her RFC determination. As will be discussed in section IIIB, ALJ Hall did this.

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases her RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Prater argues ALJ Hall failed to follow SSR 19-4p to determine whether she had a medically determinable impairment of primary headache disorder, which adversely affected the RFC. SSR 19-4p provides as follows:

> We establish a primary headache disorder as an MDI by considering objective medical evidence (signs, laboratory findings, or both) from an AMS. We may establish only a primary headache disorder as an MDI. We will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs because secondary headaches are symptoms of another underlying medical condition. We evaluate the underlying medical condition as the MDI. Generally, successful treatment of the underlying condition will alleviate the secondary headaches. . . . We will not establish the existence of an MDI based only on a diagnosis or a statement of symptoms; however, we will consider [a] combination of findings reported by an AMS when we establish a primary headache disorder as an MDI[.]

ALJ Hall complied with the directive of SSR 19-4p. Having considered the objective medical evidence, she found it was not sufficient to establish a primary headache disorder as an MDI. ALJ Hall recognized that during a consultative examination in March 2019, Prater was assessed with migraine headaches. (Tr. 26). She also cited to a doctor's visit in December 2018, where Prater was assessed with a tension headache but did not complain of acute headaches. (*Id.*). ALJ Hall noted, "[w]hile the evidence indicates a history of migraines, [Prater] has also been assessed with headaches related to a chronic sinus infection and cardiogenic headaches." (Tr. 20). In addition,

6

she observed that Prater's preventative medication was prescribed by her primary care provider, and there was "no evidence of workup by a neurologist" in the record. (*Id.*). Thus, ALJ Hall opined that the evidence overall did not reveal "a severe primary headache disorder." (Tr. 21). Substantial evidence supports ALJ Hall's determination that Prater's migraines are symptoms of underlying medical conditions and, in accordance with the regulations, she did not establish Prater's secondary headaches as MDIs. The undersigned finds no error.

Prater also asserts that ALJ Hall failed to articulate any reasons for not including specific limitations for migraines in the RFC determination despite a "voluminous record" supporting them. (DN 22-1, at PageID # 875). Citing to SSR 96-8p, Prater offers that even if ALJ Hall deemed her headaches and migraines non-severe, the regulations require that she still incorporate limitations for them. (*Id.*). Prater is correct, and ALJ Hall appropriately tailored the RFC to account for headache-induced limitations.

ALJ Hall limited Prater to light work[3] with several additional limitations. Notably, ALJ Hall specifically considered the side effects of Prater's headaches in finding that she should avoid concentrated exposure to vibration and hazards. (Tr. 28 ("[H]er complaints of side effects [from headaches], including dizziness, drowsiness and difficulty concentrating have been considered. For safety concerns, the residual functional capacity has been reduced to avoid concentrated exposure to hazards.")). Prater claims ALJ Hall failed to create a logical bridge between the record evidence and her RFC determination, but ALJ Hall's decision demonstrates thorough consideration of Prater's migraines at steps two and five. Although her discussion of Prater's migraines is not concentrated within the RFC analysis, but found throughout the decision, this is

---

[3] ALJ Hall specifically explained that light work, as defined in 20 C.F.R. 404.1567(b), involves "lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday, sitting (with normal breaks) for a total of about six hours in an eight-hour workday, and pushing and/or pulling consistent with lifting and/or carrying." (Tr. 23).

appropriate since it is clear she considered them. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time").

Prater further argues that ALJ Hall's RFC determination should have specifically accommodated for her inability to focus and concentrate on tasks. (DN 22-1, at PageID # 878). Because the vocational expert testified at the hearing that an individual who could only concentrate for one hour at a time or who would be absent from work two to three times per month due to headaches would be precluded from work, Prater suggests ALJ Hall erred in finding her capable of her past work as an office manager. (*Id.*).

In forming Prater's RFC that allowed for performance of her past work, ALJ Hall considered findings from state agency consultants showing only mild limitations in concentrating, persisting, or maintaining pace. (Tr. 23). The consultants likewise found that while Prater reported difficulty handling stress, she had no problems handling changes in her routine. (*Id.*). Prater was observed as "high functioning" and the consultants found no more than mild limitations overall. (*Id.*). As the Commissioner notes, while Prater did express pain-related complaints, the consultants found she had the mental ability to meet the mental demands of a basic work setting. (Tr. 23). Along those lines, although Prater reported difficulty with focus and concentration due to her headaches, consultative examiner Dr. Brenda Parker considered Prater's report of migraine history and opined in July 2019 that she would have only mild difficulty attending and sustaining concentration over time, and no difficulty with pace. (Tr. 21). ALJ Hall found this opinion overall partially persuasive, as her findings indicated Prater persisted well across tasks, had continuous memory, normal attention, and intact remote memory. (Tr. 22). Moreover, ALJ Hall found no indication in the record of significant complaints regarding Prater's ability to sustain attention or

concentration. (Tr. 23).

ALJ Hall also considered the consultative examination of Dr. William Waltrip in March 2019, who assessed Prater with migraine headaches but did not otherwise indicate any significant neurological deficits or limitations. (Tr. 26). While not explicitly mentioned by ALJ Hall, Dr. Waltrip further opined that Prater reported her migraines were controlled with medication on most occasions. (Tr. 466). Lastly, ALJ Hall noted that during an August 2019 examination, Prater made no headache-related complaints, and a cervical spine MRI revealed no cord compression and no more than mild abnormalities. (Tr. 27).

ALJ Hall's RFC determination is overall well-considered. She provided appropriate limitations based on Prater's medically determinable impairments, including her non-severe migraines. ALJ Hall's determination that Prater could perform her past relevant work as an office manager, which does not require work precluded by her RFC, is supported by the record evidence. While evidence certainly exists that Prater suffers migraines, some perhaps debilitating, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Despite evidence in the record that may support a contrary conclusion, ALJ Hall thoroughly considered Prater's medical records and adequately articulated her findings in accordance with the regulations.

### C. ALJ Hall's Evaluation of Prater's Subjective Complaints

Finally, Prater argues ALJ Hall rejected her testimony regarding the severity of her headaches and migraines without providing specific evidence that discount her subjective complaints. (DN 22-1, at PageID # 877–78). The Commissioner counters that ALJ Hall extensively assessed the objective medical evidence, opinions, treatment history, side effect

history, and evidence of daily activities, all of which "failed to support fully" Prater's subjective complaints. (DN 24, at PageID # 893).

When forming the RFC, an ALJ must assess the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1520c, 404.1529(a). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

ALJ Hall's analysis was proper under the regulations and does not run afoul of the Sixth Circuit's holdings in *Walters* and *Duncan*. First, ALJ Hall acknowledged Prater's complaints of migraines.[4] She then examined the record evidence to determine whether it corroborated Prater's subjective complaints. As discussed in Section IIIB, ALJ Hall explicitly determined that Prater did

---

[4] *See* Tr. 20–21. ("She stated that her neck pain causes migraines. At the hearing, she testified that she has daily headaches and approximately two migraines a week. In addition to taking medication, she stated that she lies down and tries to 'sleep off' the headache. At a consultative examination in March 2019, she reported having migraines all of her adult life. She reported being prescribed medication, which controlled them on most occasions. At her initial pain management visit in August 2019 she reported having daily headaches, and reported having a migraine about once a week. At a visit with her primary care provider in January 2020, she complained of headaches associated with a chronic sinus infection, which had been going on for about a month. She reported that the headaches felt different from her normal migraines, including the facial pain. She was prescribed medication for sinusitis, as well as an increase in her medication for headache prevention. Pain management treatment notes indicate occasional cardiogenic headaches.").

not have a severe primary headache disorder because evidence showed her headaches were due in part to a chronic sinus infection and cardiogenic issues, and because no neurologic workup had been performed by a neurologist. (Tr. 21). As ALJ Hall also noted, Prater was involved in a motor vehicle accident in 2016 that resulted in her neck pain, which she has reported causes her migraines. (*See* Tr. 24). Thus, ALJ Hall ultimately determined Prater's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning their intensity, persistence, and limiting affects were not entirely consistent with the record evidence. (Tr. 25, 27).

Even so, as previously stated, ALJ Hall took Prater's subjective complaints into account when forming the RFC. ALJ Hall considered Prater's complaints of headaches "secondary to her cervical spine complaints," since they are often brought on by her neck pain. (*Id.*; Tr. 24). ALJ Hall also considered Prater's alleged side effects, including dizziness, drowsiness, and difficulty concentrating and limited her exposure to hazards accordingly. (Tr. 28). She thoroughly discussed the evidence of Prater's migraines and reasonably determined it did not entirely support her alleged symptoms. The undersigned finds no error in ALJ Hall's analysis.

ORDER

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

May 27, 2022

Copies:        Counsel of Record

11